## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| BRADLEY SPENCER, Individually and For Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>HAILE GOLD MINE, INC.<br><br>Defendant. | Case No. 3:25-cv-00075-MGL<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

### ORIGINAL COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1. Bradley Spencer ("Spencer") brings this collective action to recover unpaid wages and other damages from Haile Gold Mine, Inc. ("Haile").

2. Haile employed Spencer as one of its Hourly Employees (defined below) in South Carolina.

3. Spencer and the other Hourly Employees regularly work more than 40 hours a workweek.

4. But Haile does not pay Spencer and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

5. Instead, Haile pays Spencer and the other Hourly Employees non-discretionary safety and production bonuses that Haile fails to include in these employees' regular rates of pay for the purpose of calculating their overtime rates (Haile's "bonus pay scheme").

6. Haile's bonus pay scheme violates the Fair Labor Standards Act ("FLSA") by failing to compensate Spencer and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 each workweek.

## JURISDICTION & VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. This Court has personal jurisdiction over Haile because it maintains its principal place of business in Kershaw, South Carolina.

9. Venue is proper because Haile maintains its principal place of business in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

10. Haile employed Spencer as an equipment operator from approximately July 2020 to June 2024.

11. Throughout his employment, Haile paid Spencer under its bonus pay scheme.

12. Spencer's written consent is attached as **Exhibit 1**.

13. Spencer brings this collective action on behalf of himself and other Haile employees paid under its bonus pay scheme.

14. The FLSA Collective of similarly situated employees is defined as:

> **All hourly Haile employees who were paid a bonus during the last three years through final resolution of this Action (the "Hourly Employees").**

15. Haile is a Delaware corporation headquartered in Kershaw, South Carolina.

16. Haile may be served with process through its registered agent: **C T Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223**.

## FLSA Coverage

17. At all relevant times, Haile was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

18. At all relevant times, Haile was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

19. At all relevant times, Haile was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

20. At all relevant times, Haile has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

21. At all relevant times, Spencer and the other Hourly Employees were Haile's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

22. At all relevant times, Spencer and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## Facts

23. Haile bills itself as "the largest gold mining operation on the East Coast . . . with plans to mine up to 130,000 to 150,000 ounces per year."[1]

24. To meet its business objectives, Haile employs workers, including Spencer and the other Hourly Employees to mine and process gold.

---

[1] https://www.hailegoldmine.com/about/ (last visited December 16, 2024).

25. For example, Haile employed Spencer as an equipment operator in its gold mine in Lancaster County, South Carolina from approximately July 2020 to June 2024.

26. As an equipment operator, Spencer's primary job duties included inspecting and preparing Haile's 200-ton haul truck and hauling ore and rock as directed from the mine to dump sites.

27. Throughout his employment, Spencer regularly worked more than 40 hours a workweek.

28. Indeed, Spencer typically worked approximately 13 hours a day and 5 days a week (65 hours a workweek).

29. Likewise, the other Hourly Employees typically work approximately 13 hours a day and 5 days a week (65 hours a workweek).

30. And Spencer and the other Hourly Employees are required to report their hours worked via Haile's designated timekeeping system.

31. But Haile does not pay Spencer and the other Hourly Employees at the required overtime rate for all hours worked in excess of 40 a workweek.

32. Instead, Haile pays Spencer and the other Hourly Employees under its bonus pay scheme.

33. Specifically, Haile pays Spencer and the other Hourly Employees non-discretionary safety and production bonuses that it fails to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

34. For example, during the August 13 to August 26, 2023 pay period Haile paid Spencer a bonus of $310.13:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Bonus | | | 310.13 | 310.13 |
| Regular | | | | 22,851.96 |

35. And, during the August 13 to August 26, 2023 pay period, Haile paid Spencer a base rate of $29.82 and an overtime rate of $44.73 (1.5 times $29.82), which did not incorporate the $310.13 bonus into his regular rate, thus resulting in an underpayment of his overtime compensation:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 29.8200 | 79.00 | 2,355.78 | 22,851.96 |
| Overtime | 44.7300 | 12.00 | 536.76 | 7,856.82 |

36. While exact job titles and job duties may differ, Spencer and the other Hourly Employees are subject to the same or similar pay practice—Haile's bonus pay scheme—for similar work.

37. Thus, under its bonus pay scheme, Haile does not pay Spencer and the other Hourly Employees overtime wages at the required rate—based on all remuneration—for all hours they work in excess of 40 a workweek.

## COLLECTIVE ACTION ALLEGATIONS

38. Spencer brings his claims as a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

39. Like Spencer, the other Hourly Employees are victimized by Haile's bonus pay scheme.

40. Other Hourly Employees worked with Spencer and indicated they were paid in the same manner under Haile's bonus pay scheme.

41. Based on his experience with Haile, Spencer is aware Haile's bonus pay scheme was imposed on other Hourly Employees.

42. The Hourly Employees are similarly situated in the most relevant respects.

43. Even if their job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

44. Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent collective treatment.

45. Rather, Haile's bonus pay scheme renders Spencer and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate, for all overtime hours worked.

46. Haile's records reflect the number of hours the Hourly Employees recorded each week.

47. Haile's records also show it paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

48. The back wages owed to Spencer and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

49. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Haile's records, and there is no detraction from the common nucleus of liability facts.

50. Therefore, the issue of damages does not preclude collective treatment.

51. Spencer's experiences are therefore typical of the experiences of the other Hourly Employees.

52. Spencer has no interests contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

53. Like each Hourly Employee, Spencer has an interest in obtaining the unpaid wages owed under federal law.

54. Spencer and his counsel will fairly and adequately protect the interests of the Hourly Employees.

55. Spencer retained counsel with significant experience in handling complex collective action litigation.

56. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Haile will reap the unjust benefits of violating the FLSA.

57. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

58. Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and Haile.

59. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

60. The questions of law and fact that are common to each Hourly predominate over any questions affecting solely the individual members.

61. Among the common questions of law and fact are:

   a. Whether Haile paid the Hourly Employees non-discretionary bonuses;

   b. Whether Haile failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

  c. Whether Haile failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

  d. Whether Haile's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

  e. Whether Haile's violations were willful.

62. Spencer knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

63. As part of its regular business practices, Haile intentionally, willfully, and repeatedly violated the FLSA with respect to Spencer and the other Hourly Employees.

64. Haile's bonus pay scheme deprived Spencer and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—they are owed under federal law.

65. There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

66. The Hourly Employees are known to Haile, are readily identifiable, and can be located through Haile's business and personnel records.

### HAILE'S VIOLATIONS WERE WILLFUL

67. Haile knew it employed Spencer and the other Hourly Employees.

68. Haile knew it was subject to the FLSA's overtime provisions.

69. Haile knew the FLSA required it to pay non-exempt employees, including Spencer and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked after 40 a workweek.

70. Haile knew Spencer and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their hours to Haile via its timekeeping system.

71. Haile knew Spencer and the other Hourly Employees were non-exempt employees entitled to overtime pay.

72. Haile knew it paid Spencer and the other Hourly Employees non-discretionary bonuses.

73. Haile knew these non-discretionary bonuses were not included in Spencer's and the other Hourly Employees' regular rates of pay for overtime purposes.

74. And Haile knew the FLSA required it to pay Spencer and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

75. Haile's failure to pay Spencer and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

76. Haile knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme that deprived Spencer and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

77. Spencer brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

78. Haile violated, and is violating, the FLSA by employing non-exempt employees such as Spencer and the other Hourly Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

79. Haile's unlawful conduct harmed Spencer and the other Hourly Employees by depriving them of the overtime wages they are owed.

80. Accordingly, Haile owes Spencer and the other Hourly Employees the difference between the wages actually paid and the proper overtime wages actually earned.

81. Because Haile knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, Haile owes Spencer and the other Hourly Employees these wages for at least the past 3 years.

82. Haile is also liable to Spencer and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

83. Finally, Spencer and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### JURY DEMAND

84. Spencer demands a trial by jury on all Counts.

**RELIEF SOUGHT**

WHEREFORE, Spencer, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order finding Haile liable to Spencer and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c. Judgment awarding Spencer and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any and other penalties available under the FLSA;

d. An Order awarding attorneys' fees, costs, and expenses;

e. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Date:  January 6, 2025

Respectfully submitted,

**ROGERS, PATRICK, WESTBROOK & BRICKMAN, LLC**

By:  /s/ *T. Christopher Tuck*
T. Christopher Tuck
Fed. No. 9135
T.A.C. Hargrove II
Fed. No. 12487
1037 Chuck Dawley Blvd., Building A
Mount Pleasant, South Carolina 29464
Phone: (843) 727-6500
Fax:    (843) 216-6509
ctuck@rpwb.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLC**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR SPENCER & THE HOURLY EMPLOYEES**